v. American Future Fund v. New York State Board of Elections. All right. Mr. Dwyer, you have reserved two minutes for rebuttal, so you may proceed. Thank you, Your Honor. May it please the Court, Tellen Dwyer for American Future Fund. AFF has a First Amendment right to engage in anonymous political speech so long as it does not reference a clearly identified candidate. Under Buckley, that means that an explicit and unambiguous reference to a candidate must appear in the communication. That's Buckley, page 43. Here, the proposed ads do not reference any person whatsoever. Well, let's talk about the proposed ads because it seems to me the proposed ads were all for an election in 2025. That's the way it was teed up to the district court. That election is long gone, and now you've pivoted to an argument, well, you may want to use them again, but that wasn't argued below, right? I guess I'm wondering why this is in moot. You still have your case going in the district court. You're going to get to make these arguments, but I'm not sure why we need to rule on a preliminary injunction that is no longer enjoining anything relevant to a 2025 election. So a couple of points on that, Your Honor. First, yes, this first arose in the context of the 2025 election. We wanted to run the ads in 2025. That's why we brought the suit initially, but we did not only want to run them then, and we explicitly... You didn't want to only run them then, but, I mean, the preliminary injunction is only about them, right? No, Your Honor. Respectfully, the preliminary... Well, let's go to your papers and just sort of see what you said to the district court because I thought you made it very clear that this was only with respect to the Nazapylai challenge to the 2025 election ads. Is that wrong? That is the gloss that the State is putting on it. If you look at the proposed preliminary injunction that we requested, we requested an injunction preventing the State from enforcing against us for running these 11 ads during the penancy of this litigation. Of the litigation, which is still ongoing, right? Yes, Your Honor. So it has applied challenge for these particular ads that you wanted to run, but you did not say that you would only run them during the 2025 election. That's correct, Your Honor. And everybody knew... So you did say something like the reason why it's urgent is because we'd like to run them in the next few weeks. Yes, and we were trying to get the district court to act on our P.I. on an expedited basis, so we... Right. So I guess if you were to get relief here, like if you were to get the P.I., would you just start running these ads tomorrow? When would they run? Certainly not tomorrow. It takes some time to actually produce them, but we would like to run them before the June primaries where there are a number of candidates who are endorsed by the DSA running. And would they be these ads, the ones that are the subject of the P.I. requests? Potentially among others. And we also... Among others, right. So this is the script that you would follow, and there's nothing in the script that says vote in 2025. It just says vote. That's correct, Your Honor. And if I can answer... Hang on. Hang on. But you haven't told us what the other ads would say. How is it you expect us to give you a ruling with regard to these other ads that you want to run when we can't, when we don't have the text? That makes no sense to me. Why would we do that? So what are we supposed to do? Just say, well, based on what we've seen, these look okay, and if there's a reasonable fact similar to these, then they can do it? There's no guidance there to the district court. That sounds advisory to me. Your Honor, I guess to be clear, we are not asking for a ruling that other potential materially similar ads are protected speech. I point out the fact that we also would like to run similar ads in the future only as it goes to the exception to mootness for capable of repetition for evading review. So to Judge Sullivan's question, if the court decides that our request for a PI as related to these ads are moot, then the question becomes, is a similar dispute between us and the Attorney General in the future? We submit that it is because, and we say in our complaint that for 20 years, we have been running ads. Okay. So just to be clear, so the argument is that the controversy is not moot because you would like to follow these exact, you would like to run these exact ads that's the subject of the PI request as soon as you, or I guess before June, you're saying. But even if we thought, even if we didn't believe you and you didn't really intend to you definitely intend to run ads that are either exactly the same or very similar, which would bring you within the exception to mootness. That's absolutely correct. And the reason why it would evade review is because the state is saying, well, we can't even tell you whether you're allowed to do it until we know the character of the election. And so you don't know until very close to the election whether you're going to be allowed to do it. So that's an additional reason why it evades review that is particularly stark in this case. But even putting aside the state's position, which we think is problematic for a lot of reasons, the Supreme Court has said in Wisconsin Right to Life that as applied challenges to campaign-related speech restrictions are a paradigmatic example of capable of repetition.  So even if the state weren't taking that position, the Supreme Court in Wisconsin Right to Life thinks it's reasonable that, you know, the advocacy group doesn't know exactly what they're going to say until it's pretty close to the election, and it's going to evade review because there's a shorter time horizon. That's absolutely right. And if I could just remind the panel the facts of that case, because I think it shows that we actually have a much stronger showing of... I guess the reason I was emphasizing what the state's position is here is because you might say, well, you're not really like Wisconsin Right to Life because you have basically a script of what you want to say already. So it's not like you're formulating one, but the state is actually saying they can't tell you whether you're allowed to do it or not or the conditions under which you'd be allowed to do it until it's pretty close to the election. Which is remarkable. We submit that that is very inconsistent with Buckley. Like if you need to wait until close to the election and do an exhaustive study of the dynamics of the election... Yeah, so I actually... So I get that, right? So I get the idea that if the statute says that you could write a script by advertising and it might be an issue ad, but then if something else happens in the world, like somebody enters the race or the DSA endorses a candidate or something, all of a sudden something that used to be an issue ad is now an electioneering communication, that would mean the statute is vague, right? That's your position. On the vagueness, yes. On the vagueness. But actually, you know, since both the district court and the state are saying that the statute just parallels the distinction that was made in Buckley, isn't your argument really that the state's just wrong about the statute's coverage? No, Your Honor. And Kareem versus Slack decided that exact issue. So in order for us to get to the constitutional question, all we have to show... We're not equivalent with how they interpret their statute. All we have to show is that their statute arguably covers our conduct. So we're not saying they're interpreting... But do you think it does? So I guess that's my question, right? So the statute says for it to be an electioneering communication, it has to be a clearly identified candidate. Clearly identified means there's the name of the candidate, there's a picture of the candidate, or there's an unambiguous reference, which the Supreme Court in Buckley says that means it's the person's initials, the person's office, you know, something like that. Like a reference to the person that's just unmistakable. Your ads don't have that, right? I totally agree with that, Your Honor. So if that's true, then, you know, aren't you saying, well, actually, if the statute parallels Buckley, it means it's not ambiguous, like it's pretty clear what's covered, it's just that yours is not covered? Well, first of all, it's pretty clear the state, although they use the same words, the limiting construction in Buckley where it has to be explicit, and in the examples you point out, it's quite clear they're not using that method. So is it arguable that we're covered by the state statute? Sure. We're here arguing about it. They have a position where they say that it can be clearly — Actually, so I guess that's what I'm asking about in terms of the vagueness challenge. So if there's a first best reading of the statute, which is that it does parallel Buckley, and I understand where that line is drawn, if I think the state is drawing the line somewhere else, does that mean that the statute is vague because I'm going to presume that the state has a reasonable interpretation, or does it mean that the state actually is not vague, they're just wrong about it? Well, I think it can become vague by the state's position. Because remember in Buckley, it's the same words, but the court says in order to avoid vagueness, we have to put this gloss on it, right, the explicit gloss. They've removed that gloss. But that's not because of the state's position. That's because the words themselves would allow for, you know — I think the language of the statute in Buckley was something about like with respect to a candidate or whatever, and that could encompass some issue ads and so on. So they said, well, we have to, you know, make it more concrete, right? I think respectfully, you're confusing two parts of Buckley. With respect to, they made that part more concrete, but that had to do with express advocacy. But they also said, I think the sentence is, just as we need to limit with respect to, we also need to limit clearly identified candidate to explicit and unambiguous. So that was the gloss that Buckley was putting on the words in order to avoid vagueness. We respectfully submit the state has taken that gloss off. So that's how we have —  So then — all right, fine. I understand that. So what's interesting about that is the Supreme Court provides language that says this language is not vague. Mm-hmm. And they put that in Buckley v. Vallejo. The New York State legislature takes that language and puts it in their statute. And so the argument that everybody's making is, well, that can't be vague because it is the language the Supreme Court said was clear in Buckley v. Vallejo. But then the state is interpreting it in a way that's not consistent with the way the Supreme Court interpreted it in Buckley v. Vallejo. I guess my question is, does that interpretation make the language vague if we know it's not  Or does it just mean the state's wrong? What the state took from Buckley and put in their statute was the words of the federal statute issue, the unambiguous. They did not take the gloss that Buckley put on those words, explicit. And that's why it's vague. So your argument, I guess, would be, well, maybe unambiguous reference by itself might be a vague phrase. And it's the footnote in Buckley that explains, well, that means a nickname or a position title or something. And that's what makes it unambiguous. But because the New York State legislature didn't enact the footnote, we're left with a vague statute. Is that right? No, it's not the footnote. If you look at the regulation that they passed and their litigating position, then it's clear that they are interpreting the words not to have the gloss of explicit that Buckley said was necessary to avoid vagueness. But I want to get to the original question, which was, isn't this all just a statutory question? Well, can I interrupt? Because I know you want to get to those questions. I think we both want to get to those questions. But there's a district court that gets to decide all these things in the first instance. You brought a preliminary injunction motion so you could get here and do it here. But we're doing it on a different standard, which is a likelihood of success. And now we don't have an election pending. You don't even know when you're going to run these ads. But you still want us to treat this as though this is November 2025. And so I don't understand why we're not just letting you go back to the district court, restart a case that you sought to stay, see what the district court can resolve, and then maybe we'll get this thing when we can really decide the issue once and for all instead of doing it piecemeal with the preliminary injunction standard. So why aren't we doing it that way? Because if this court finds that our as-applied challenge is moot because there's what?  Yeah. Okay. I mean, if there's a new election that comes up in a couple of months, you can then go back and try to get an injunction at that point. This case might be resolved by then, for all I know. There's a motion to dismiss. But it just seems to me that what you really want to do is litigate here. So I don't understand why you get to do that when everything you said in your papers was about needing to do advertisements via television, radio, and direct mail in New York City area in the coming weeks for the next month, all about the 2025 election. That's what was the need for speed, the irreparable harm that the district court was dealing with. And we're dealing with a totally different situation now, and you're saying it doesn't matter. You know, so let's assume that this P.I. is moot because the as-applied challenge is moot, right, about these particular ads. The reason why we can still litigate this here is because it's capable of repetition but evading review. And the Supreme Court has said that again and again, particularly in Wisconsin Right to Life, that these sorts of disputes . . . So we're going to find that there was irreparable harm in November . . . Yes. And there's still irreparable harm now because it's a different calculus for irreparable harm than it was then. No, Your Honor. Yes, it is. There's no election that's taking place in the coming weeks. So if we're looking at capable of repetition but evading review, and that exception is applied in the P.I. context frequently. We cited some examples in a footnote in our brief. If we're talking about that, then the question is, was there irreparable harm at the time . . . So if it's capable of review in four years, then . . . because that's when the next mayoral election will be, three and a half years, that would still give you the right to go forward on this preliminary injunction appeal now, in your view, yes? Putting aside the other elections that happened . . . Answer my question. Just answer my question. Four years from now. Yes, so . . . That's the next election. That's the next time you want to run these ads. You're saying, we still have to deal with this now because it could, you know, it could be . . . it could happen again. That's exactly what the Supreme Court held in Wisconsin right to life. Because these sorts of disputes about election-related speech tend to come up very shortly before an election. And you can't . . . But you have . . . this is a case where you've got a pending case. You can litigate this now, and if you need to move quickly because you're now going to run ads in connection with primaries or something else, you can go back to the district court and then if you don't get the relief you want there, come back to us. We're teed up. We can do this. We're not looking to shirk this, but it does seem to me that these issues that you and Judge Bonascia are talking about are going to eventually be resolved by a district court. And you're asking us to do it on a different standard, right? This is now the likelihood of success standard. You're not asking us to decide this issue once and for all. Your Honor, respectfully, these issues are not eventually going to be decided by a district court if this court finds that the as-applied challenge is moot. Yes, we would have a facial challenge, but to resolve a facial challenge, the district court doesn't need to consider and frequently doesn't consider the actual conduct. All they have to decide is are there a substantial number of unconstitutional applications relative to the statute's plainly legitimate suite. And here there is absolutely a plainly legitimate suite. Right. So if the as-applied challenge is moot, then all you could just sort of say is the ads are, or sorry, that the statute is vague in the abstract. That's right. And if the statute parallels Buckley v. Vallejo, it's hard to say that it's vague in the abstract because the Supreme Court said that it's vague. But like the interaction between the State's interpretation and these particular ads is what highlights the possibility of the vagueness, right? That is one way, but it's not a question the court would have to reach. And also the interaction between the enforcement action and these particular ads is also what gives rise to your First Amendment challenge because you're saying that there is a, the government does not have an interest in imposing disclosure requirements on pure issue advocacy and that requires the controversy to be about an ad that we can say is pure issue advocacy, right? So that's not about a facial challenge. That's right. And to resolve the facial challenge, all a district court would have to say is that, well, there's a number of constitutional applications, for instance, to ads. So that's the implications of saying it's moot. But then in terms of whether it's actually moot, I mean, is there anything about the particular ads that say, you know, go vote in the mayoral election or like oppose socialism in the mayoral election? No, Your Honor. And so you've said that you're going to run these exact ads again, right? Are you? Are you going to add them? You want to run them now, right? Before June, I guess. If we were given the opportunity to. Well, you didn't say that to the district court, right? Again, we asked for the ability to run the ads through the penancy of this litigation. But no, the focus was certainly on... Do you have a question? When I asked you before, you said you intended to run these ads and different ads. Isn't that what you said? Yes, both these ads and materially similar ones in the future. Do you have in your possession the copy of the other ads that you're intending to run? No, Your Honor. And we don't know what they are. No? So all you want from us is a guidance with regard to the six that the state objected to because the state didn't object to, what, five others? That's correct, Your Honor. We're absolutely not asking you to decide the constitutionality of other speech. That's only as it relates to the exception to mootness for capable repetition but evading review. Would you agree with me that an unambiguous reference to an individual is somewhat context-dependent? I would agree that you look at the context of the ad, you read the whole ad. I would not agree that you do an exhaustive study of what the media... Let me ask you a hypothetical. Sure. Is there some indication that you'd like to run these when the city council comes up for election in the fall? Is there some indication that we would run them in the fall? Yeah. With regard to the city council elections? Again, we don't think that they're regard to any particular election, but sure. Before the November elections, sure. Okay. Let's presume that the city council stands for election in the fall. And there are... I'm not familiar with the city council, the New York City Council, but let's presume like that there are 30 districts. I'll bet there are many more. And one of the ads said, don't... Socialism in the 32nd city district and the endorsed candidate in this 30th district is bad for New York. Don't vote for that person. Is that an unambiguous reference to the socialist endorsed candidate in that particular city district? So if I heard your hypothetical correctly, the ad said the... referred to the socialism endorsed candidate. The Socialist Party or whatever the name of the organization is. Yeah. So if there is... The DSA, the Democratic Socialist Association of America, whatever it is. So this is an important distinction, Your Honor. First, if the ad is referring to like the DSA endorsed candidate, then yes, that's an explicit reference to a candidate. And fairly objective and easy to figure out who was endorsed. So that could be an unambiguous reference. But if it is just... But because of the context, correct? So the Supreme Court says that you can look at very limited context. So, again, Wisconsin right to life says you primarily look at the substance of the ad. The court could take judicial notice of, for instance... That's why I gave you the example. Because, A, the example I gave you fits with both within the regulation and or Buckley does that. Again, if there's a reference to the DSA endorsed candidate. Here, there's no reference to any candidate. It's just talking about the DSA. I understand that, counsel. I appreciate that. But I'm only asking you to answer the hypothetical. I'm not asking you to abandon your advocacy with regard to the fact that you want to use these ads. So, yes, I've answered the hypothetical that if there's a reference to the DSA endorsed candidate and it's very easy to figure out there's only one DSA endorsed candidate, then, yes, that could be an unambiguous reference. All right. And your point is that, in your view, the regulations don't require the level of particularity that you think that Buckley requires. Absolutely. The regulations say that you can look at the policy platform of the candidate and decide based on the issues that he's supporting and line that up with an issue ad and say, ah, it must be this candidate. That is flatly inconsistent with Buckley. It's not the Bright Line rule, and it would chill protected speech. Can I ask a question? So, just personally, just to clarify the mootness, because you keep saying we want to run these ads and similar ads. But just to be precise, you're saying we want to run these exact ads before June. That's why the case is not moot. But even if you thought the case was moot, it's, like, totally obvious that we want to run similar ads because that's what we do. Exactly. So that's for the exception to mootness. But those are two separate arguments. Two separate arguments. Two separate arguments. They're not the same thing. But nobody's saying the case is moot, right? We're not saying your case is moot. We'd be saying simply this appeal of a preliminary injunction for an election that's already gone is moot. Yes, but, I mean, the implications of that latter position, and I think the State would agree, is that the as-applied challenge is moot. Because the only thing that the as-applied challenge is seeking is a permanent injunction, which is exactly similar to the PI. So they've cited a case, for instance, where the preliminary injunction was moot because one particular election was over and there was a dispute about whether there's a First Amendment right to open primaries. But the First Amendment claim that was seeking a permanent injunction going forward to allow this party to have open primaries, that was not moot. So in that instance, the PI would not be capable of repetition but evading review because the underlying claim is not moot and can still be litigated. Here, the underlying claim, if you say that the PI is moot, for our — What I'm saying is that the order issued by the district court was based on facts on the ground at the time of the 2025 election. And that was one of the arguments for the irreparable harm, is that we've got an election that we need to move on. That's not the case today. And so that results in a different calculus for a preliminary injunction. Do you disagree with that? No. Well, the irreparable harm is not just the election. It's the self-censorship of us continuing not to run ads that we would like to run. All right. But if you came in and said there's an election in four years and I need a preliminary injunction now because we want to run some ads in three and a half years, there would be no need to grant a preliminary injunction on those facts, right? You seem to think yes. I think you seem to think that you get a preliminary injunction now even though you have no intention of running an ad for three and a half years. No. I agree with Your Honor that if we had no intention of running any ads until three and a half — Right. So the temporal facts, the facts of when these things are going to run, are relevant to the assessment of whether or not a preliminary injunction is appropriate. Yes. And those facts are different today than they were when the district judge issued the preliminary injunction. So — Yes or no? Are the facts in the world different? Yes. Are the facts that are relevant to determining whether these ads reference an explicit — So we're going to reverse the district court because of its calculus of facts that are different than the ones we're going to be considering now. No. I don't think that's right, Your Honor. The question was only whether these ads reference a clearly identified candidate. If you look at the district court's opinion, the judge doesn't talk about these ads at all in the First Amendment context. You keep switching to the merits. I'm saying that one of the things you need to do to get a preliminary injunction is to show that you need to do this quick. You don't get to just walk into court and say, I'd like you to resolve this now so I have just sort of a preliminary view of what the court thinks is the likely outcome in this case. You don't get to ask for that. You have to have a reason for this thing. And wanting to speak in the First Amendment context and not being able to because — When you want to speak matters. And you can't even say today when you want to speak. You're saying sometime in the next couple of months. Well, I said I was asked originally whether we would run them tomorrow. But you're saying that basically in response to my question, which was about when you would run them, you said if we got the PI, we would start making arrangements to run them right away. Absolutely, Your Honor. And we want to make sure to run them by June. That's correct. So you went to the district court and you said we want to run these ads. The state is telling us they're electioneering communications and so would trigger all of these burdens under the statute. We don't think they're electioneering communications or even if they are, it would be unconstitutional to treat them that way. And so therefore we need a preliminary injunction, right? That's correct. And there was some urgency because you would have preferred to do it around the time of the 2025 election, but you were seeking an injunction just on an ongoing basis pending litigation, right? Absolutely. And litigation is still pending, right? That's correct. So you still want to run the ads. That's correct. And the irreparable harm is every day that passes, you don't get to run the ads as you're being deprived of First Amendment rights, right? That's absolutely correct, Your Honor. Okay, and in terms of the controversy that's happening, you still say you want to run the ads as soon as you can. And the state is still saying we can't tell you that these are going to be treated as issue ads, right? Because the state's position is it all depends on the particular context. And so as the election shapes up, it might be that they're electioneering communications, right? Yeah, page 27, they say that.  It will depend. So they say that. So the question is whether you can provide effectual relief. So if we issued an injunction that said the state cannot treat these as electioneering communications, that would provide you with relief, right? Absolutely. Mr. Dwyer? Yes. Mr. Dwyer, there's no candidate to clearly identify right now, is there? We submit there never was a candidate that was clearly identified. Well, wait a second. Have you just told us that the state told you that you're going to have to file a statement because these pertain to a clearly identified candidate? Has the state taken that position subsequently? No, respectfully, Your Honor, that's not quite what I said. Excuse me. Let me just finish, counsel. Sure. It's difficult because I'm not there. Okay. Please be patient with me. Thank you.  I'm trying to be patient with you. All right. Has the state indicated to you that, in their view, there's a clearly identified candidate that these refer to? What the state has indicated is that these ads may reference a clearly identified candidate, but they will not know for sure until it gets closer to the June elections. That's what they say on page 27 of their brief. And under Kareem v. Slack, that's all we need to show. We need to show that we have a substantial risk, enough to chill our speech. We've alleged that that's exactly what's been happening, and that's all we need to show. They say we don't know. But if you look at the positions that they've taken, a major factor in their position is if you criticize the DSA and there are DSA-endorsed candidates, that that, at least on their mind, gets you very close. I guess you have to also look at how widely it's reported and a bunch of other factors. So we're in March, right? So, like, let's say in a month we said you should have the preliminary injunction. So it could be, well, let's not even. Let's just sort of say, you know, in a month you actually bought airtime and scheduled the ads to run in June, right, in the run-up to the election. If it turned out that shortly before the ads were set to run, the DSA endorsed a bunch of candidates running in the primaries, then it would trigger the state's interpretation, and they'd say, oh, well, now you have to register as an independent expenditure and do all the donations and things, right? And then by the time we got here, it would be past June. But if you had the protection of a preliminary injunction, the state could not do that. Correct. Right? So that shows that the PI could give you effectual relief in this case, right? Absolutely right. Okay, can I ask a question about the regulation? Because you just said a moment ago that what the regulation allows you to do is say that there's a clearly identified candidate based on whether there's a candidate associated with a particular aspect of the policy platform, right? The district court thought, and I don't know, this seems to be the way the regulation is structured, that actually the regulation repeats the definition of clearly identified candidate from the statute. It has the three-pronged definition about there's a name, there's a photo, or there's an unambiguous reference, right, which you said Buckley explains as a nickname or a description of the office or something like that. And the part of the statute that talks about the policy platform, that's about determining whether the ad advocates for or against the clearly identified candidate. So if, in fact, the way the regulation works is you first have to show that you meet the three-pronged definition, and then after that, to decide whether it advocates for or against, you decide whether it's talking about an issue that's identified with the person, that would not really be vague, right? So you don't dispute that if you ran an ad that said socialism is bad, but it's superimposed on top of a photograph of Mayor Mamdani, that that would be an electioneering communication, right? Yes. Okay. So then aren't you really saying that the state is misinterpreting the regulation? I'm saying that the regulation is extremely vague. It does give, again, the Buckley definition, but then it also says that for the purposes of determining that a communication is advocating for or against a candidate, you look at these factors. And they say, well, those factors are only about the advocacy part, not the candidate part. Look at the first factor. Whether it identifies a particular candidate by name, by other means, such as party affiliation, or distinctive features of a candidate's platform or biography, that is not about whether the ad is advocating. That's about whether it references, whether it identifies, in their words, a candidate in the first place. And it's the exact position the state has taken throughout this litigation. They say that, well, we need to look at the candidate's biography. But, you know, all those factors are preceded by the provision that says, for purposes of determining that a communication is advocating for or against a candidate or by a proposal, the following factors shall be considered. So since there's a separate definition of clearly identified candidates that parallels the statute, you might understand it as being, well, you have to meet the definition of clearly identified candidate, and then if you're within a time period in which it matters whether you're advocating for or against a defeat, then you consult these factors, right? That's what the district court thought. That is what the district court thought. I think the definition that Your Honor is relying on of clearly identified candidate, there's a question of what that definition means, right? That's what we're disputing today. Or whether it's exclusive. Yeah. So your position is like, actually, I do kind of think there's a better reading of the statute, but I can't say that the state's interpretation is outside the bounds of the statute. And so because the statute is susceptible to that interpretation, or the statute and or the regulation is susceptible to that interpretation, that makes it vague. And that's what's causing the self-censorship, right? As a kind of general principle, like let's say I thought that the statute or the regulation was not itself vague, but the state was just wrong about it. It means that you can't get preliminary relief from a federal court for a vagueness challenge, right? If the statute and the regulation were clear on their face, but they were just taking a different position, no. We think that the regulation is not clear, and their position only solidifies. So what's the ambiguity in the regulation? It's that even though it has that definition of clearly identified candidate, it doesn't provide that that is the exclusive definition, and so maybe you could look to the advocates for or against factors to determine whether it identifies a candidate in the first place. Well, I wouldn't say exclusive definition, but I'd say the definition itself, there can be some argument over, you know, what an unambiguous reference means, and then you go to the regulation where it says for the purposes of determining whether a communication is advocating before or against a candidate. You look at all these things, including the distinctive features of the candidate's platform, and that is what's very vague, so that's what led to the question of, well, if I'm running an ad criticizing the candidate. If the regulation was more clear that it does what the district court thought it did, which is that you only look to those factors once you already know that there's a clearly identified candidate, would that mean that there's not a vagueness problem? Yes. If it was more clear that you couldn't be considered referencing a clearly identified candidate in the first place by virtue of looking at distinctive features of the candidate's platform, then that would resolve the vagueness problem. But we submit that it's not that clear, and that their interpretation of their own regulation, which in their own statute we should give some weight to, and that interpretation creates the vagueness. So I get the argument you're making about the vagueness. Can I ask, because, you know, you have developed the argument that it's inconsistent with Buckley v. Vallejo or whatever, if I were to kind of predict what the New York State courts would do in terms of how they would interpret the statute, do I have grounds for saying that they might agree with the state? They certainly might, yeah. And, Your Honor. Like a case or something that sort of suggests that they read it that way, to diverge from Buckley. I don't have a case that is read that way. I think this is a fairly unprecedented position that the state is taking in this case. So we don't have a case on that. All right. Mr. Dwyer, you've reserved two minutes for rebuttal. We'll now hear from Mr. Ledetz. Thank you, Your Honor. Thank you. Thank you, Your Honor. Philip Ledetz for the appellees. This Court should dismiss this preliminary injunction appeal as moot. You might just move those mics down a little closer to you.  Yeah, just because with Judge Wesley on the screen, those mics become crucial. Thank you. Yes. Thank you very much. Is that better? Judge Wesley, you can hear okay? Yeah, that's good. Thank you. Thank you. This Court should dismiss this preliminary injunction appeal as moot, or alternatively affirm the district court's denial of a preliminary injunction, particularly when there is now no election imminent and plaintiff has thus asserted no imminent irreparable harm. So first, the preliminary injunction motion on appeal addressed only use of the proposed ads before the November 2025 election. But why do you think that? I mean, I understand that your argument was this ad is really about the 2025 election, but American Future Fund's argument always was this is not about a particular election. And this is an issue ad about socialism. And even though we'd like to do it in 2025, we're seeking a preliminary injunction to cover the whole length of this litigation, which continues. Well, they're saying that now, but here's what they said when they were actually moving for a preliminary injunction. They said that they plan to run the proposed ads in the coming weeks before the November 2025 election with no reference to any subsequent election. They said the plaintiff needed an immediate ruling. Again, these are exact quotes. Immediate ruling. So that's explaining why they wanted a rule, why there was a need for expedition at that time. So if they had said, to be precise, like, we'd really like to run these ads in the coming weeks, if we missed that opportunity, we're still interested in running them later. Well, they actually said the opposite. They said another thing they said is that it would be that the plaintiff would face constructive denial of their time-sensitive motion if the court didn't rule on that motion before the November 2025 election. That's the appendix that we added to our brief. You can see that language directly. So this is all completely new. But in any event, if they actually do want to address the 2026 election, they can do that. They can do it back in the district court in the ordinary course. All they have to do is present their new as-applied challenge. The district court can address that. The next election is the next election. I guess my question is why is it a new challenge if they're still interested in running the same ads that are the subject of this P.I. request? Because they only brought an as-applied preliminary injunction motion about the application of the clearly identified candidate analysis in the context of the 2025 election. Again, that was the state's argument that in the context of the 2025 election, this is a clearly identified candidate. But American Futures' argument always was this is not about a particular candidate or election. This is an issue ad. Right? So, like, you're sort of reading your merits argument into the mootness question, aren't you? Like, their position always was we just want to oppose socialism in general. Well, then there would be no reason to limit their motion and focus to the 2025 election. But in any event, if they want to. But wouldn't that be, like, relevant because that's explaining to the district court the timeline on which it makes sense to decide the motion because, like, it does matter whether you're saying it at a time that the issue is of particular interest to voters or not. But the request does not say we want to do it during this specific time period. It just says we want a PI pending the litigation. So, again, to the extent that they're trying to bring a broader facial challenge about how these statutes work, that's not – and they can do that. They can do it back in the district court. But why isn't it also an as-applied challenge if they still want to run these particular ads? It's as-applied to these particular ads. Because it could only be as-applied to these particular ads in a future election. So it could be as- So that's your argument, right? So their argument is this ad doesn't identify a particular candidate. It's an issue ad because it only talks about an issue. It doesn't reference any particular candidate. The state is saying, no, actually, because it references an organization or maybe an issue that's very closely associated with the candidate, it is an electioneering communication. And so your argument is you can't actually tell if it's an electioneering communication or not unless you know the context of the election in which it's happening, right? But let's say we agreed with them and issued a preliminary injunction that says that you're wrong about that and it has to be treated as an issue ad. Wouldn't that mean that now they know that you're not going to be able to treat it that way, whereas before we issued such an injunction, you're not willing to make that commitment? But that's not something to be decided on a preliminary injunction because you only get a preliminary injunction to, you know, preserve rights for some. The mootness is about whether we can provide effectual relief, right? So they want to run these ads and they say, we think we have a First Amendment right to run the ads and have them treated as issue ads and not subject to the burdens of electioneering communications. The state is saying, well, we're not necessarily going to let you do that because depending on how the election shapes up, we might treat them as electioneering communications, right? If we issued, if like a court issued an injunction that said you can't do that, does that provide relief in this case? Does that mean it can't be moot? No. And the question is, does the mootness exception apply? Does it evade review? No, no, no. That's a different question. So before I get to that, I want to ask about like just whether this controversy itself is moot. Their position is these ads, we want to run them, they can't be treated as electioneering communications. Your position is, no, they can be treated as electioneering communications and we're not going to say that we're not going to treat them that way. That's a dispute and the court could provide relief to adjudicate that, right? It's a dispute that at this point is only relevant to future elections and we have not taken the position that these ads clearly identify a candidate with respect to the 2026 election or a future election. So the other side just said we'd like to run them before June. So if, let's say, we decide this case by, you know, in a month or something and they buy airtime for June, right, and it's exactly these same scripts, if in June the DSA endorses some other candidates, would you say that these are issue ads or electioneering communications? They might very well be issue ads. But they might also be electioneering communications, right? It is possible, but that's something that hasn't been addressed.  That means that actually there's a dispute about what they're allowed to do and not allowed to do that continues, isn't there? There is an abstract dispute that can be addressed in a timely way. But what I'm saying is if we run these exact ads in June, which is only a few months away, you're saying we might treat them as electioneering communications and require the registration and the disclosure and whatever, right? I actually think most likely they wouldn't, because what's specific about those ads was something, what's relevant about those ads is something very specific to the 2025 mayoral election, okay? Those ads we're talking about, you know, the board took the position that those ads clearly identified a candidate because there was only one citywide candidate. Okay, you say most likely, but you can't commit to it. But then let me sort of ask also about the evading review question. So let's say what happens in June is the DSA has a really big press conference and they say here's somebody that we're endorsing in the Democratic primary because this person is a champion of socialist values, right? So in the context of that election, would these ads be in electioneering communication? It's not entirely clear at this point. Okay, so then if in fact, you know, they buy airtime for June, right, and then, you know, at the very end of May or the beginning of June, like DSA makes that announcement, and then you say, okay, now we've determined it's electioneering communication. But they've like bought airtime for the ad to air on June 5th. We wouldn't be, the court would not be able to determine in that short time period whether you're right or wrong. Let me just go back to, I don't think that's true, because look, what happened here is they went to the district court less than a month before the November election and they got a ruling. And they got a ruling within another week and they decided not to seek emergency relief from this court on their own, you know, choice. They could have. They can do the same thing before the 2026 court. Well, this is an expedited appeal. You know, I understand it's not. They didn't seek a stay. They didn't seek a stay. Exactly. Thank you. They didn't seek a stay. That's exactly right. They didn't seek a stay. Wait, wait. Excuse me. You've asked a number of questions, Judge Monash. Maybe I'll ask one. Did they seek a stay? No, absolutely not. And they could have. And they didn't. Let me ask you another question. Is it your position that these ads currently, is the state's position that these ads currently, if they were to run the ads, I'll read you one. The Democratic Socialists of America, our extremist political organization, seeks to control the future of New York City. They wanted to fund and ultimately eliminate the police and prisons, decriminalize all drugs, no matter how dangerous, and radically change our economic system. The only way to stop them is to vote. Is it your view that that ad refers to a clearly identified candidate at the present time? No, I don't think that would be our view. No. It was specific. So there's no controversy. The state's position that currently that ad does not need disclosure. Is that correct? I mean, I can't make a definitive, you know, decision. Is it your view? I can't make a definitive decision. But it's my view that that would not clearly identify a candidate at this time. It was specific to the 2025 election. What about in June? You just said that you don't know, right? We don't know the election. We don't even know the candidates. The candidates haven't even been designated formally yet for the June election. But you're observing the discretion to treat it as legendary communication in June, and their position is that you're not allowed to do that, right? That is a controversy that continues between the two parties here, right? Again, maybe it could be considered in some abstract sense a controversy, but it's a controversy that is moot with respect to the 2025 election, to the extent it's relevant to the 2026 election, it can be addressed below in the ordinary course. So then that came up in the other thing. So if we were to say that the PI is moot because really the ads are only about 2025, wouldn't it mean the as-applied challenge in the district court is also moot? Because that was also about the – Yes, but they could bring a new as-applied – All they have is the facial challenge. Well, they could bring a new as-applied challenge as to the 2026 election. We're not saying they couldn't do that. So if tomorrow they said, all right, here are the ads we want to run in June, and it's the exact same text, why does it make sense to say that we should require them to file a new action as opposed to, like, continue the controversy that remains ongoing here? I wouldn't take a firm position they couldn't address in the district court, but the point is this preliminary injunction, which is the only thing that's on appeal, was an as-applied challenge as to the 2025 election. That was what the basis was for the irreparable harm, imminent irreparable harm. There's no such basis anymore. So there's no reason that – But why is there such a basis? I mean, if they say that they want to engage in First Amendment-protected speech and they're being denied that opportunity, isn't that the irreparable harm? No, because if you look at these ads, every one of them says vote. They were about, you know, being able to get these ads out there before an election, okay? And there's no election – Like the election in June. Like there's elections every year. Right, and that's – Multiple times a year, right?  The next election is months away, you know, three months away. And in this case, they didn't even bring their challenge with the 2025 election less than a month before that election, so – There's elections three months away, and you say, depending on how the election shapes up, this may or may not be an electioneering communication. I think most likely it won't, but yes. So if they – if tomorrow they file a new motion for a PI and they said we want to run the exact same ads and we want to do it on June 1st and we think that it can't be treated as electioneering communication, you would say we don't agree with that, right? Why do we think that we'd be able to resolve that whole controversy in the three months before June? Because they could have done it in the one month before November. They went to the district court. The district court ruled within a couple weeks. They had another week to come to you and get a stay if they wanted it. They didn't do that. That's their own – that's their own decision that they made. They could do the same thing. Wait, which way is it? You're talking about the stay? I mean, like, they would have sought a stay if all they were interested in is the 2025 election, but they're saying they're not. So, like, actually doesn't it kind of make sense that they would seek an expedited appeal that's not limited to the 2025 time period? I mean, I don't think so because they were saying all along there's expedited. But let me point you to some precedent that I think is particularly helpful here. In our brief, we cite the Freedom Party of New York case and the Independence Party of Richmond case, both cases, binding cases from this circuit, and they address exactly this question. They're preliminary injunction appeals of issues that were coming up before an election, and what this Court said is when the election passed, the issue was moot and not subject to the mootness exception, when the remaining underlying issues could be addressed back in the district court. And the Court explained in Freedom Party that the issue doesn't evade review, whereas here there's no reason why the issue couldn't be fully litigated prior to the next election, which is still several months away. So the question is actually whether we can fully litigate it prior to the next election, right? So even if it were possible to issue a stay, that would not be a full litigation, right? We wouldn't reach the merits, right? So isn't the analysis that we're applying whether we actually get to the merits of the claim before the next election? Like the availability of like an emergency stay, I understand that that's a tool that courts have, but the analysis about capable of repetition but evading review is whether we can get to the merits before the next election happens, right? I think the issue is whether they could get what they needed to get before the next election, and that they clearly could. Well, then nothing would be capable of repetition but evading review because you could always get an emergency stay pretty quickly, right? You could go to the district court, get it today, that day, and then get a stay from the Court of Appeals the next day. It is an exceptional exception, and particularly in this context. And I would say that. Well, the Supreme Court says like election controversies are the paradigmatic example of capable of repetition but evading review. Yeah, at final judgment. My colleague kept pointing to the Wisconsin right to life case. They've cited a number of other cases on the evading review standard. Every case from this Court that they have cited is an appeal from final judgment, not an appeal on a preliminary injunction. That's the difference. And the cases that are on preliminary injunctions. I was just pointing out that actually the way the analysis should work is we're trying to determine whether we can get to a final judgment before the next election, and you keep talking about how well you can get an emergency stay. But if you're saying all the cases are about a final judgment, that sort of supports what I'm saying, which is the way we should think about it is whether it's possible to have a complete litigation between now and the next election. And I think you'd agree that it's pretty unlikely between now and June to get to the merits of an as-applied constitutional challenge, right? I mean, I certainly don't think it's impossible, but, okay. But I guess the point is— Okay, can I ask a question about the vagueness thing? So in response to the questions that I was asking a moment ago, you were saying, actually, right now I don't think it's an electioneering communication in the context of if it were ran today, it would be an issue ad. But if it were run in June, depending on what the DSA does and what the candidates' platforms are, it might be considered electioneering communication, right? Yes, I still think it's unlikely. If that's true, if the statute supports that interpretation, doesn't that mean, like, there's got to be a vagueness problem? Because it means, like, you could write an ad, you could buy airtime, and based on something that third parties do out in the world, all of a sudden the status of the ad and how it's treated under the law transforms based on nothing you do or say. No, I don't think that's a vagueness problem. The same issue applies to things that Buckley itself specifically referred to as clearly fitting in within that third prong of the clearly identified candidate definition, which, by the way, makes clear that there has to be some context applied because the first two prongs, you know, are if it identifies the name of the candidate or the image of the candidate. Other unambiguous reference would include use of the candidate's initials, e.g. FDR, the candidate's nickname, e.g. Ike, his office, e.g. the president or the governor of Iowa, or Candace as a candidate, e.g. the Democratic presidential nominee, the sensorial candidate of the Republican Party of Georgia. I understand that that requires, you know, some context because you have to know who the sensorial candidate of the Republican Party of Georgia is, but, like, all of those examples include a reference to a person, right? It can't be that, you know, like, it might be if something happens in the world, all of a sudden your ad is irrelevant because the person dropped out or something. But it can't be that, depending on what people's platforms are, something that otherwise would be an issue ad now is an electioneering communication. And that's not really what we're saying. What we're saying is that in the distinctive context of the 2025 election, you had only one citywide candidate who was a member of and endorsed by the DSA and through whom the DSA could have— Why does it matter that it's a citywide candidate? So if the DSA is endorsing city council candidates, why is that irrelevant? Because the ad does not say anything about— The ads are all talking about the city. They're all saying we want to do something with the city. Like, for example, one ad says— When you vote for people for city council, are you also thinking about city issues? So let me give you an example of one of the ads. One of the ads talks about you should vote because otherwise the DSA could control the future of— vote against the DSA because the DSA could control the future of New York City. Well, the only candidate who could control the future of New York City, who is DSA-endorsed and a DSA member, is the mayoral candidate who is Mondani. So— I don't know. I mean, the city council and the mayor both affect the future. I don't know if either one of them completely controls the future of the city, right? Isn't the way you would understand that ad, like, this is an agenda we think is bad and you should oppose it? I agree to the extent what you're saying is that there needs to be some contextual analysis. Well, it's not like Life says, you know, we're going to say that something is the functional equivalent of express advocacy if it's not susceptible to any reasonable interpretation other than play for the election and defeat of a particular candidate. So I'm saying, if you say, well, the DSA stands for bad principles of socialism and socialism is bad for the city, isn't that at least susceptible to the reasonable interpretation that they're just saying, like, socialism is bad and here's an exemplar of that agenda that we think is bad? Look, to the extent that there are, you know, somewhat difficult issues here, that's something that the district court should decide in the first instance with respect to any future relevance. Obviously, we think it's moot, and it is moot with respect to 2015. Okay, fine. I understand you think it's moot. But the district court hasn't addressed this. Well, the district court addressed it, right? But the district court says the reason that the statute is not vague is because it tracks the Buckley distinction. And Buckley, as I just read to you, thinks that an unambiguous reference involves, like, a reference to a person, not an issue that's associated with a person. I think that Buckley simply said that it was listing these examples, that these examples are included among the things that could clearly identify a candidate. I think the problem with a bright-line rule— But it doesn't actually say these are examples. I mean, I guess it might say it includes. Yeah, that is the language. Or any other—it doesn't, like, list anything that is not a reference to a person, right? I mean, we think—let me be clear. We think that, in the context of the 2025 election, these ads did identify, clearly identify a person. They clearly identified Mamdani. He was the only DSA candidate. That's my question. So if you're right that the statute allows for that regulation, what it would mean is that you can have an ad, and the person who wrote the script and bought the airtime, like, doesn't actually know in advance whether it's going to be treated as electioneering communication or an issue ad, because if there's an endorsement before the ad airs of the DSA or, you know, a prominent socialist candidate or something, it might transform the way you treat the ad. Again, I don't think so, and to the extent that these are questions that are— Why don't you think so? Because I thought that that's what you just said, right? Like, you can't say whether it's going to be electioneering communication in the context of— You can't say definitively, but— It depends on what happens in the election. It is true that you can't make a definitive determination until you understand the context of who the candidates are in a given election and, you know, how you might clearly identify a candidate. Let me give an example. You know, I think what you're suggesting is, oh, shouldn't there be some sort of byline rule that you have to explicitly identify a candidate, and I think the problem with that is it encourages evasion of the very requirements that, you know, the requirements that we have here for disclosure, because take the 2025 mayoral election. If you said, vote for the man with the red beret, okay, that's not explicitly referring to a candidate. Well, it is because you're referring to a man, right? Like, so I don't know. That's, like, much closer— Or vote red beret. It's like— I mean, so, like, let's say, all right, you're talking about Curtis Lewa. Like, he has a tough-on-crime thing, right? So, like, if you say, vote for tough-on-crime policies, because he's the only candidate in the mayoral election associated with tough-on-crime policies, would that be a— No, it would not. It would not, and that's because it's ambiguous. Okay, so you say socialism is bad. That's bumped on it, but, like, crime is bad. No, because it's not saying socialism is bad. It's not Lewa? I don't understand. Like, what's the difference? Let me explain the difference. We're not—these ads don't just say socialism is bad, and, in fact, we agreed that the ads that were more along those lines were not electioneering communications and were taken out of the scope of the preliminary injunction motion for that reason. These ads all specifically talk about the DSA— Okay, so I'll talk about that in a second. But even before they took the DSA ads out of the P.I. motion, you did argue to the district court that all of the ads, including the socialism ones, were electioneering communications. But now you're saying that you don't believe that. No, that is not our position. The ones that say socialism is bad but don't reference the DSA, those are pure issue ads and don't trigger all of the disclosure obligations. Right, within the context of that election, that's not what we're saying. But then you're saying the difference between the socialism ads and the DSA ads is that it references the DSA, which is an organization. But if it's possible to reference socialism and not have the ad be about Mamdani, why isn't it possible to reference a socialist organization and have the ad not be about Mamdani? It is possible, but you have to read the ad as a whole in the context of that particular election. And when it's saying that, you know, vote for the— you don't want the DSA to control the future of New York City, in the context of the 2025 election, everybody understood that— or an objective person would understand that that was a reference to Mamdani. It's just the only way to read that. But in any event, all of this is completely moot, and it's underscoring— So in Wisconsin right to life, right, the Supreme Court says that ads about the pro-life position are issue ads, right? But if there's an election in which one candidate is pro-life and one candidate is pro-choice, everybody would understand that the person who ran that ad would favor the pro-life candidate. But as long as you're not specifically talking about that candidate, it's still an issue ad, isn't it? Like, just the fact that you could understand how the issue plays out in the election doesn't make it an electioneer communication, does it? It doesn't necessarily. But I think the issue is that the 2025 election was a very distinctive context. And the problem is if you start to, you know, say there's some sort of categorical rule that because this didn't refer to the DSA candidate and instead just referred to the DSA and said vote, you know, that that's not sufficient. I mean, you're inviting evasion of the rules. So, you know, my colleague on the other side admitted that if this ad had said DSA endorsed candidate instead of DSA, that would be enough to make an electioneer communication. Our point is that in context, there's no meaningful difference. So the ad actually says the DSA has a bad agenda and it's bad, right? In part, yes. So if the ad had said the DSA has a bad agenda, we make no comment on the particular candidates endorsed, but we present this ad to tell you that their agenda is bad for New York City. Well, that would just be an electioneering. I think that would be an electioneering. I'm sorry. Excuse me. That would not be an electioneering communication. That would be an issue ad. Yes. But isn't this ad at least susceptible to the reasonable interpretation that that's what it's doing? It's just opposing the agenda of the DSA? I mean, if it is, these are all statutory interpretation questions as to application of the New York law that the district court can address because it was never within the scope of the complaint. There's no such state law claim in the complaint. And it's for the district court to address in the first instance or really for, as the district court thought was more appropriate, this to be addressed in the state court. They could bring an Article 78. I mean, I take it you're talking about there's not a state law claim, but I assume that you don't think that your interpretation of the statute is an unreasonable one. So if your interpretation is within the scope of the statute and it means that the statute does mean you can't really tell whether it's going to be treated as an issue ad or not, that might mean that it's vague, right? Well, but then the Supreme Court was wrong because our statute says exactly the same thing that the Supreme Court said is not vague. That's what the, you know, our statute has exactly the same language. It says a clearly identified candidate is either, you know, the name or the picture or image or its other unambiguous reference. And so how could that be vague for us but not for them? I mean, there's no difference in the statute or the regulation that implements the statute. And just to be clear, as you were getting out, Judgment Asked You with my colleague on the other side and the district court found New York's regulatory standard for determining if an ad advocates for or against a candidate has no application here. The, you know, the… So you agree that the way the regulation works is it provides the three-prong definition of clearly identified candidate and all those factors only come into play to determine whether you're advocating for or against, right? Absolutely. So really, the case hinges on the meaning of unambiguous reference, right? But your understanding of unambiguous reference is that it doesn't mean that there needs to be a specific reference to a person. It could be that it's an issue in an organization that's really associated with the candidate. That's uniquely identified with the candidate, yes. But so uniquely identified, that is one of the factors in the regulation that you just said does not apply to determine whether it's an issue. Well, it may, that analysis may also be relevant to determine whether an ad advocates for or against a candidate. Okay, so what you're saying is even though the factor doesn't apply, I'm actually reading the factor into the definition of clearly identified candidate. No, absolutely not. I'm elaborating on what the definition is in the statute and identically in the regulation, which is what is an unambiguous reference. I'm interpreting what is an unambiguous reference. I am not using those regulatory factors that specifically explicitly say they are not talking about what is a clearly identified candidate. I'm just determining in the limited context of what the statute says is a clearly identified candidate and what the regulation says is a clearly identified candidate whether this is an unambiguous reference or not. All right. Thank you very much, Mr. Levitz. We'll now hear from Ms. McGuire. Thank you, Your Honors. Your Honor, to show ongoing standing and ongoing irreparable harm, we only have to show a substantial risk of an enforcement action such that we face self-censorship. We can show that for the reasons that you just heard, that the State is saying we don't know, and they've changed their position a little bit in the last few minutes, but if you look at their brief, page 27, they say we don't know if you'll face an enforcement action if you run these ads this year, and their statute applies after January 1st of an election year. This is an election year. If we run these ads tomorrow or in the next few weeks, we can't do that without facing that substantial risk, and that ongoing substantial risk of an enforcement action is what gives us ongoing irreparable harm and ongoing standing, i.e., not mootness. Secondly, on just the point of whether you can have capable of repetition but evading review in the PI stage, I won't get into the cases, but we cited several in the footnote to page 9 of our reply brief, so I refer your honor to those. On the idea that we could have sought a stay, I think there's a little confusion here that it was a denial of a PI, so if we stayed the denial, we still would have no protection. We still would have to be put in a situation, which is what the state ultimately wants, where we just have to act, guess what they're going to do, run the ads, and then potentially be forced to disclose our donors, which we don't want to do and would be a death sentence to the organization. The fourth point, on the merits of it, I think it's quite clear how unprecedented their view is. They actually just said, we don't want a bright-line rule under Buckley for when you can apply a disclaimer and disclosure. We don't want a bright-line rule, that was his words, because that, quote, invites evasion. Yeah, that's bright-line rules. Sure, they're not as good for the regulator. They can't get at every bit of speech that they want, but the Supreme Court says the tie goes to the speaker, not to the censor, which is why we have bright-line rules, and the benefit of them is it gives certainty, so we don't need to have these hypothetical debates where we're looking at all sorts of factors. The speakers can know in the moment some issue happens. I want to run an ad a month before an election. That happens all the time. That's what the Supreme Court says in Wisconsin right to life. We need to be able to know, can we run it or not? Great, let's get our ads out there, because speech is very time-sensitive, which is why it's a paradigmatic example of capable repetition but evading review. And then finally, this idea that this is a statutory dispute, not a constitutional dispute, particularly in the First Amendment context, that is just flat wrong. The exact same argument was tried in Kareem v. Stack, the idea being that the State Bar Association had a rule against harassment, but there was an exception for First Amendment-protected speech. So people tried to bring a pre-enforcement review, saying if I speak on critical race theory or trans issues, I could be disbarred for harassment. And the State Bar tried to say, well, no, you couldn't, because we have the statute itself says there's an exception for First Amendment conduct. And the court said, no, no, no. This court said, no, the question is just, is it arguable? Is there enough of a risk of enforcement that you would have to self-censor? And if it is, we get right to the First Amendment question and decide whether your speech is protected. And that's the question we asked this court to decide today. But that's not the vagueness issue. That's the First Amendment. First Amendment, yes, Your Honor. For vagueness, you would have to look at the statute. But for First Amendment, once we've shown that it's arguable and that we're facing a substantial risk of an enforcement action, which it's quite clear that we are even today, then Your Honors get to the merits and say, does this speech, do they want to run, do they have a constitutional right to run it anonymously? And we submit that we do. Thank you, Your Honor. Thank you very much.